**Richard Eugene JOHNSON, Jr., Appellant,**

v.

**Colleen JOHNSON, Appellee.**

No. 04–96–00144–CV.

Court of Appeals of Texas, San Antonio.

May 7, 1997.

Rehearing Overruled June 9, 1997.

he was shooting peeping toms."  This testimony   was offered outside the jury's presence.

R. Emmett Cater, San Antonio, for Appellant.

Marvin Miller, Miller & Miller, San Antonio, for Appellee.

Before RICKHOFF, STONE and DUNCAN, JJ.

## OPINION

STONE, Justice.

This is an appeal from a final judgment of divorce in which appellant, Richard Johnson, complains about the property division, child support order, and attorney's fees award contained in the decree. For the following reasons, we affirm the trial court's judgment.

### Facts

Colleen Johnson filed for divorce against Richard Johnson, her husband of four years, and sought sole managing conservatorship of their child, Logan Johnson. Richard counterclaimed for divorce and sole managing conservatorship. The issues of conservatorship and attorney's fees were tried before a jury, with all other issues decided by the trial court in a separate hearing. The jury found that Colleen should be named sole managing conservator and awarded her $10,000 in attorney's fees. In the separate hearing, the trial court determined child support and Richard's possessory conservatorship rights, and divided the marital estate. All findings were entered into final judgment.

### Property Division

■ In his first point of error, Richard argues that the trial court erred by awarding some of his separate property to Colleen. All property possessed by either party during or on dissolution of marriage is presumed to be community property and the party challenging the presumption must trace and demonstrate by clear and convincing evidence that the property is separate. TEX. FAM.CODE ANN. § 5.02 (Vernon 1993). Clear and convincing evidence is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the allegations sought to be established. TEX. FAM.CODE ANN. § 101.007 (Vernon

1996). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Hilliard v. Hilliard,* 725 S.W.2d 722, 723 (Tex.App.—Dallas 1985, no writ).

■ The property about which Richard complains are items Colleen removed from the home upon filing for divorce. The only evidence regarding this property was introduced through Colleen's testimony on cross-examination. Colleen was asked whether she had in her possession household items which were listed on Richard's inventory and appraisement list as his separate property. She said that the list "looks about right, give or take probably a few things." This one exchange forms the basis for Richard's claim that the trial court erred in awarding his property to Colleen. We are not driven to the same conclusion. Colleen's answer merely confirms that she is in possession of the items; it does not establish that the items are Richard's separate property. Richard produced no evidence to substantiate the claim that the items listed in his inventory were his separate property. In fact, he did not even refer to the property or the characterization of the property when he testified. Richard first raised the issue to the trial court *after* the parties had rested and the trial court had announced its decision in open court. Because Richard failed to produce clear and convincing evidence that the household items in Colleen's possession where his separate property, the trial court did not err in awarding the household items to Colleen. *See Gutierrez v. Gutierrez,* 791 S.W.2d 659, 667 (Tex.App.—San Antonio 1990, no writ) (finding that trial court's characterization of property as community was proper where presumption was not rebutted by clear and convincing evidence). Point of error number one is overruled.

■ Next, without citing any legal authority, Richard argues that the trial court erred in awarding to him the community property debt on the couple's van because the evidence established that the community assets were depleted, and thus the satisfaction of the debt would come from his sepa-

rate property. Courts have much discretion in dividing the marital estate in a just and right manner and the division will not be disturbed on appeal absent a showing of an abuse of discretion. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). Equality in the division is not required, *Vannerson v. Vannerson,* 857 S.W.2d 659, 668 (Tex.App.—Houston [1st Dist.] 1993, writ denied), and this court indulges every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Murff,* 615 S.W.2d at 698.

■ Colleen brought into the marriage a car which she owned outright. After filing for divorce, Richard sold her car, apparently without her consent, and she began driving their van. Because Colleen entered the marriage with a car, was not working at the time of the divorce, and Richard was earning approximately $10,000 per month, the trial court awarded the van to Colleen and ordered Richard to pay the community debt. In light of the disparity of the parties' income and Richard's action of selling Colleen's car after she filed for divorce, we do not find that the trial court acted unreasonably or arbitrarily in awarding the van to Colleen while ordering Richard to satisfy the remaining obligation.

■ Likewise, we reject Richard's contention that the court's order constitutes an impermissible division of his separate property. As is often the case in divorce proceedings, Richard and Colleen apparently had more community debt to divide than community assets. Under such circumstances, payment of community debts after entry of a divorce decree will always require use of separate funds since the community estate no longer exists. Nonetheless, the community debts must be paid, and if the parties cannot agree on who is to pay the debts, it is the duty of the trial court to enter an appropriate order. That is precisely what was done in this case. Point of error number three is overruled.

### Attorney's Fees

■ In three points of error, Richard complains about the award of attorney's fees. First, relying upon *Chiles v. Chiles,* 779 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1989, writ denied), *overruled on other grounds by* 855 S.W.2d 619, 624 n. 15 (Tex. 1993), he argues it was error to award fees because the evidence demonstrated that his separate property would be used to satisfy such award. Second, citing to the equal protection clause and the due process clause, Richard argues that awarding fees in a no fault divorce violates his civil rights. Third, Richard asserts that the trial court erred in awarding fees on appeal.

Unlike *Chiles,* the instant case involves a suit affecting the parent-child relationship in which attorney's fees are properly recoverable. TEX. FAM.CODE ANN. § 106.002 (Vernon 1996). In cases involving both the division of community property and the parent-child relationship, the court has discretion to award reasonable attorney's fees either as a part of a just and fair division of such property or as costs in the suit affecting the parent-child relationship. *Capellen v. Capellen,* 888 S.W.2d 539, 545 (Tex.App.—El Paso 1994, writ denied). In the instant case, the fees were awarded as costs in the suit affecting the parent-child relationship. Points of error number two and four are overruled.

■ Richard's final argument regarding fees also fails. The attorney's fees to which he refers were fees awarded during the pendency of the appeal and not fees awarded for an appeal. Section 109.001 of the Family Code authorizes payment of reasonable attorney's fees and expenses in order to preserve and protect the safety and welfare of the child during the pendency of the appeal. TEX. FAM.CODE ANN. § 109.001 (Vernon 1996). Such fees are awarded in a temporary order which is not subject to interlocutory appeal. TEX. FAM.CODE ANN. § 109.001(c) (Vernon 1996). Mandamus, not the instant appeal, is the appropriate remedy to attack such an order. *Saxton v. Daggett,* 864 S.W.2d 729, 736 (Tex.App.—Houston [1st Dist.] 1993, no writ). Point of error number five is overruled.

### Child Support

■ In two related points of error, Richard challenges the child support order.

We review a trial court's child support order under an abuse of discretion standard. *Zajac v. Penkava*, 924 S.W.2d 405, 408 (Tex. App.—San Antonio 1996, no writ). Richard first complains that the trial court erred in adding statutory child support on top of Social Security disability benefits. Richard correctly argues that an obligor may be entitled to a credit on his child support obligation for disability benefits received by his child. *See In the Interest of Allsup*, 926 S.W.2d 323, 328 (Tex.App.—Texarkana 1996, n.w.h.); *Lake v. Lake*, 899 S.W.2d 737, 739–40 (Tex.App.—Dallas 1995, no writ). The issue of credit for Social Security benefits, however, was not presented to the trial court, and thus pursuant to Rule 52 of the Texas Rules of Appellate Procedure, Richard has preserved nothing for review. Point of error number six is overruled.

■ Richard next contends that the $1,200 monthly child support order is excessive because it includes rental expenses for an entire house when his child is only one-fourth of the household members. Evidence was offered that Colleen is not employed outside the home and that Richard's monthly gross income, the majority of which comes from a trust fund, is approximately $10,000. Colleen's uncontroverted testimony established that Logan's needs totaled $2,129 per month. Under section 154.061(b) of the Family Code, a self-employed person with monthly wages of $9,500 is determined to have a net monthly income of $6,365. Section 154.126 of the Family Code provides that if the obligor's net resources exceed $6,000 per month, the court shall presumptively apply the percentage guidelines to the first $6,000, which is twenty percent of the obligor's net resources, or $1,200 per month. The trial court did not abuse its discretion in awarding the presumptive amount of support when Richard produced no controverting evidence of the child's needs and it was established that Colleen did not work outside the home. *See* TEX. FAM.CODE ANN. § 154.122(a) (Vernon 1996) (providing that support guidelines are presumed reasonable and order conforming to guidelines is presumed to be in best interest of child). Point of error number seven is overruled.

### Jury Instruction

Richard next complains about a jury instruction which was purportedly submitted to the jury and argues that its submission was error. The record stands in stark contrast to Richard's contention as this instruction is *not* in the jury charge. Point of error number eight is wholly without merit and is overruled.

### Bill of Exception

■ Richard's ninth point of error contends the trial court erred in excluding certain testimony of David Hitt. Our review of evidentiary rulings is guided by an abuse of discretion standard. *Ethicon, Inc. v. Martinez*, 835 S.W.2d 826, 831 (Tex.App.—Austin 1992, writ denied). David Hitt, Colleen's ex-husband from a previous marriage and father of their two children, was called to testify about Colleen's behavior as the possessory conservator of their children. In general, Hitt testified that she restricted his visitation access. Hitt was also asked whether his daughter tells lies. Colleen's objection to this question was sustained. In a bill of exception, Hitt testified that his daughter occasionally lied to him to protect her mother, Colleen.

Richard's sole contention is that Hitt's testimony was "perfectly acceptable testimony and evidence, and should have been admitted to prevent a false verdict requiring a reversal." This argument fails to take into account Rule 103 of the Texas Rules of Civil Evidence and the wide latitude reviewing courts afford trial courts in evidentiary rulings. The trial court properly excluded Hitt's testimony regarding his daughter's tendency to lie because it was irrelevant to the issue of which party should be named managing conservator. Hitt's testimony did not suggest that Colleen encouraged her daughter to lie or condoned such behavior; it merely indicated that his daughter occasionally lied to him. The trial court's ruling does not qualify as that which is arbitrary or unreasonable. Point of error number nine is overruled.

*Modification of Medical Services*

In his final point of error, Richard claims that the trial court erred in not including his proposed procedure for obtaining medical services for Logan. *See* TEX. FAM.CODE ANN. § 154.191 (Vernon 1996) (stating that medical support order may be enforced, modified, or clarified). This issue was not presented to the trial court, and thus there is nothing preserved for review on appeal. TEX.R.APP. P. 52. Point of error number ten is overruled.

*Sanctions*

In the prayer of her brief, Colleen claimed that Richard filed a frivolous appeal, and requested the imposition of sanctions. Following receipt of Richard's reply brief, Colleen motioned this court to sanction Richard and his attorney, R. Emmett Cater, for disparaging remarks contained in Richard's reply brief which egregiously maligned the trial judge by questioning both his fitness to comprehend the complexities of the instant case and his integrity to follow the law.[1]

Rule 8.02 of the Rules of Professional Conduct provides that a lawyer shall not make a statement concerning the qualifications or integrity of a judge that the lawyer knows to be false or with reckless disregard as to its truth or falsity. TEX. DISCIPLINARY R. PROF. CONDUCT 8.02(a) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Pamp.1997) (STATE BAR RULES art. X, § 9). The use of *ad hominem* attacks toward the trial judge when an adverse decision is rendered, as was done in the instant case, is ill-advised at best, and certainly is a violation of an attorney's duty, as guardian of the law, to "maintain the highest standards of ethical conduct" and to "demonstrate respect for the legal system and those who serve it, including judges...." TEX. DISCIPLINARY R. PROF. CONDUCT preamble ¶¶ 1, 4 (1989), *reprinted in* TEX. GOV'T CODE ANN.,

tit. 2, subtit. G, app. A (Vernon Pamp.1997) (STATE BAR RULES art. X, § 9).

During oral argument of this cause counsel for Richard continued to assert the disparaging comments about the trial court. While attorneys are granted great latitude in presenting arguments in an appellate court, when attorneys speak disrespectfully of the trial court, they "exceed their rights and evidence a want of proper respect for the court...." *Mossop v. Zapp,* 179 S.W. 685, 685 (Tex.Civ.App.—Galveston 1915, no writ). Counsel stated that it "pained" him to say what he did about the trial court, but justified his comments as necessary to the representation of his client. An attorney's resort to personal attacks on the trial judge in the interest of "serving his client" serves neither the client nor the legal profession. Zealous representation does not and cannot include degrading the court in the hopes of gaining a perceived advantage.

Under Rule 84 of the Texas Rules of Appellate Procedure, this court is authorized to sanction only the appellant for a frivolous appeal. When an attorney engages in misconduct before our court, however, we retain the inherent power to discipline such behavior when reasonably necessary and to the extent deemed appropriate. *Campos v. Investment Management Properties, Inc.,* 917 S.W.2d 351, 358 (Tex.App.—San Antonio 1996, writ denied) (Green, J., concurring) (citing *Public Util. Comm'n of Texas v. Cofer,* 754 S.W.2d 121, 124 (Tex.1988); *Kutch v. Del Mar College,* 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992, no writ)). We choose to exercise our inherent disciplinary powers to invoke sanctions against R. Emmett Cater for his conduct which degrades our profession and assess sanctions at $500.

As highly visible symbols of government under the rule of law, judges must "strive to enhance and maintain confidence in our legal

---

1. Richard's reply brief stated as follows: "The trial court's pathetic determination to 'take from the rich and give to the poor,' regarding the entire Record of the matter of Richard's separate property, is a classic example of disregard for the law and the facts, by a man incompetent to comprehend the case at hand." We note that the trial judge previously served as a district judge for four years, a justice of this court for fifteen years—the last ten years as chief justice, a Texas Supreme Court justice for eight years, and Dean of Baylor School of Law for eight years. Judge Barrow currently serves the citizens of this state as a senior judge, often sitting by assignment in the district courts.

system." TEX.CODE JUD. CONDUCT, preamble (1993), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (Vernon Pamp.1997). Confidence in our legal system is undermined when attorneys are allowed to assail a judge personally rather than addressing the legal issues at hand. We take seriously our duty to maintain confidence in our legal system, and we believe that our obligation to ensure the proper administration of justice is not fulfilled in this case merely by the assessment of monetary sanctions.

A judge who receives information clearly establishing that a lawyer has violated the Texas Rules of Professional Conduct should take appropriate action. When the violation raises a substantial question about the lawyer's honesty, trustworthiness, or fitness as a lawyer, the judge "shall inform the Office of the General Counsel of the State Bar of Texas or take other appropriate action." TEX.CODE JUD. CONDUCT, Canon 3D(2) (1993), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (Vernon Pamp.1997).

In light of counsel's disparaging remarks about the trial court, his firm adherence to those remarks during oral argument, and his claims of error about matters that never occurred or were never presented to the trial court, a substantial question has been raised about counsel's honesty, trustworthiness, or fitness as a lawyer. Consequently, we are bound by Canon 3D(2) of the Code of Judicial Conduct to inform the State Bar of Texas of this matter. *See In the Matter of J.B.K.*, 931 S.W.2d 581, 585 (Tex. App.—El Paso 1996, no writ). We therefore order the Clerk of the Court, Herb Schaefer, to forward a copy of this opinion to the Office of the General Counsel of the State Bar of Texas, for investigation and any other action it may deem necessary. TEX.CODE JUD. CONDUCT, Canon 3D(2) (1993).

The judgment of the trial court is affirmed and sanctions against R. Emmett Cater, counsel for appellant, are assessed at $500.