**In the Matter of Marynell MALONEY.**

No. 04–97–00334–CV.

Court of Appeals of Texas,
San Antonio.

June 18, 1997.

or give its own definition.

Marynell Maloney, Maloney & Maloney, P.C., San Antonio, for Appellant.

Before HARDBERGER, C.J., and RICKHOFF, LOPEZ, STONE, GREEN, DUNCAN and ANGELINI, JJ., en banc.

## OPINION

PER CURIAM.

This is an original proceeding in which Marynell Maloney, the respondent attorney ("Maloney"), was ordered to show cause why this Court should not sanction and refer her to the State Bar Grievance Committee. The order was precipitated by the written assertions made by Maloney in a motion for rehearing and en banc reconsideration of the opinion issued in cause number 04–97–00070–CV on March 19, 1997. The assertions ascribe improper political motivations for the court's decision and imply that the court misrepresented the record in its opinion.

Specifically, Maloney asserts in the motion that "[p]olitics should not win the day over incapacitated rape victims," and "Plaintiffs can think of no reason for this opinion other than politics." Maloney further contends that "[i]t must be embarrassing to take such a pro-rapist, pro-big-insurance-defense-firm position with so appallingly non-existent legal or logical basis," and "[the] Court should admit it is writing new law to assist the insurance companies of a sleazy nursing home that happen to be represented by an insurance defense firm." Finally, Maloney describes the court's reasoning as "specious" and states that the court "goes on to make some rather outlandish representations which are not supported by the record, the transcript, or by any matter before the court."

In her response to our show cause order, Maloney initially apologizes *if* she was inappropriate or offensive; however, the substance of her response supports our interpretation of her initial remarks. Maloney asserts that: "The panel was comprised exclusively of Republican judges, one of whom had a very hard fought, very close election where I was a known active supporter of his

opponent; also, it was well known that I have a long history of supporting the Democratic party. There existed more than one reason why the panel could savor a bit of political revenge." We pause to note that the *en banc* reversal of the panel's original opinion in no way substantiates any assertion made in Maloney's original motion for rehearing, which was stricken from our record. In Maloney's response, she reasons: "the fact that the panel initially chose not to publish its opinion to me seemed like further corroboration of it being less than proud of its position in this particular opinion." Maloney is mistaken. This court's decision to publish opinions is not dictated by our "pride" in our work but by the standards set forth in Rule 90(d) of the Texas Rules of Appellate Procedure.

▮ Maloney seeks to defend her remarks on the basis of the First Amendment and zealous advocacy for her client. Although an attorney's remarks may be protected on the same terms as a layperson's outside the judicial process, *see State Bar v. Semaan*, 508 S.W.2d 429, 433 (Tex.Civ. App.—San Antonio 1974, writ ref'd n.r.e.), an attorney's right to free speech and her obligation to zealously represent her client are limited in the formal judicial setting where the State has a substantial interest in preserving the integrity of the judicial process and the public's confidence therein. *See, e.g., In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959); *Bradley v. Fisher*, 80 U.S.(13 Wall.) 335, 20 L.Ed. 646 (1871); *In re Westfall*, 808 S.W.2d 829, 835–36 (Mo.1991), *cert. denied*, 502 U.S. 1009, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); *Cerf v. State*, 458 So.2d 1071, 1074 (Fla.1984); *In re Frerichs*, 238 N.W.2d 764, 768 (Iowa 1976); *In re Buckley*, 10 Cal.3d 237, 110 Cal. Rptr. 121, 129, 514 P.2d 1201, 1209 (1973), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); *State v. Nelson*, 210 Kan. 637, 504 P.2d 211, 214 (Kan.1972); *Mossop v. Zapp*, 179 S.W. 685, 685 (Tex.Civ.App.—Galveston 1915, no writ); *see generally* LAWYERS' MANUAL ON PROFESSIONAL CONDUCT (ABA/BNA) 101:605(1993)(noting majority of courts have held that lawyer's freedom of expression must be tempered in accordance with professional standards of conduct). As these courts have stated:

It is true that public figures and those speaking on public matters should not be held in fear of retribution for their every word. [An attorney] is nevertheless subject to the Rules of Professional Conduct and does not enjoy a privilege recklessly to impugn before the public the integrity of the judiciary.

*In re Westfall*, 808 S.W.2d at 838.

It is one thing to allow an attorney his truthful criticisms against our judicial system. However, it is quite another to allow an attorney a poetic license to falsely slander a circuit judge with untrue accusations of political corruption and bribery. Such accusations represent more than a personal attack upon the particular judge, but casts [sic] slur and insult upon the judiciary as a whole.

*Cerf v. State*, 458 So.2d at 1074 (citation omitted).

We find respondent's assertions unprofessional because they attribute to this court sinister, deceitful and unlawful motives and purposes. .... The conduct here involved is generally held not protected by freedom of speech guarantees under the first amendment.

*In re Frerichs*, 238 N.W.2d at 767, 768.

[Our adversary] system is built upon the belief that truth will best be served if defense counsel is given the maximum possible leeway to urge, in a respectful but nonetheless determined manner, the questions, objections, or argument he deems necessary to the defendant's case.... When, however, aggressive advocacy gives way to insolence and disrespect towards the court and particularly when it degenerates into "impertinent, scandalous, insulting or contemptuous language reflecting on the integrity of the court," it is the trial judge's "bounden duty to protect the integrity of his court."

*In re Buckley*, 110 Cal.Rptr. 121, 514 P.2d at 1209 (citations omitted).

[A]n attorney's right to free speech is tempered by his obligation to both the courts and the bar, an obligation to which ordi-

nary citizens are not held. .... Attorneys have wide latitude in differing with, and criticizing the opinions of, the courts, yet when they resort to misrepresentations and unwarranted assaults on the courts whose officers they are, they violate their duty and obligation and are subject to discipline.

*State v. Nelson,* 504 P.2d at 214, 216.

The greatest latitude should be allowed counsel in presenting their arguments in an appellate court; but whenever they allow their personal animosities to control them, and indulge in abuse or vilification of opposing counsel, or speak disrespectfully of the trial court, they exceed their rights and evidence a want of proper respect for the court in which such argument is presented.

*Mossop v. Zapp,* 179 S.W. at 685.

We have also recently stated: "An attorney's resort to personal attacks on [a] judge in the interest of 'serving his client' serves neither the client nor the legal profession. Zealous representation does not and cannot include degrading the court in the hopes of gaining a perceived advantage." *Johnson v. Johnson,* 948 S.W.2d 835, 840 (Tex.App.—San Antonio, 1997, n.w.h.).

A distinction must be drawn between respectful advocacy and judicial denigration. Although the former is entitled to a protected voice, the latter can only be condoned at the expense of the public's confidence in the judicial process. Even were this court willing to tolerate the personal insult levied by Maloney, we are obligated to maintain the respect due this Court and the legal system we took an oath to serve.

 "A judge who receives information clearly establishing that a lawyer has violated the Texas Rules of Professional Conduct should take appropriate action." *Johnson v. Johnson,* 948 S.W.2d at 841. Maloney's conduct must be considered objectively, in light of what a reasonable attorney would do in the same or similar circumstances, not subjectively on the basis of her subjective intent. *In re Westfall,* 808 S.W.2d at 837. We believe Maloney's assertions in both the origi-

nal motion for rehearing and her response to our show cause order are direct attacks on the integrity of the justices of this Court. *See* Tex. Disciplinary R. Prof. Conduct 8.02(a) (1989), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon Supp. 1997)(State Bar Rules art. X, § 9). However, we also believe the most appropriate forum for assessing an appropriate sanction against such conduct is the State Bar grievance process. We therefore order the Clerk of the Court to forward a copy of this opinion, Maloney's original motion for rehearing, our show cause order, and Maloney's response to the Office of the General Counsel of the State Bar of Texas for investigation and any other action it may deem necessary.